## Expert Witness Disclosure

Qualifications: My name is Mike Jakupcak. I am a certified special educator, general educator, school psychologist and school administrator in the state of Montana. I am currently retired, but I work on a part time basis for the Office of Public Instruction for the state of Montana. These duties involve monitoring of special education records and files reviews and family-school disputes resolution. I was a professor at the University of Montana for nearly 20 years in disabilities and I have worked in public schools in various capacities in the states of Montana, Washington, Indiana and Illinois. My training and experience reflect expertise in many aspects of disability eligibility, program content and services including Individual Educational Programs under the Individuals with Disabilities Education Act. I also have extensive experience with the qualifications, development and implementation of services and programs under the Vocational Rehabilitation Act originally mandated in 1973, including Section 504 of that act. This section of the law is directly aimed at the elimination of discrimination toward all individuals with disabilities.

I have served as an expert witness, offered depositions and given testimony during the last five years in two cases

Newman vs. Spring Creek Academy, District Court, Sanders County, 2010

In the matter of A.M, OPI case #2012-01

Data Considered: The files and materials I reviewed for this disclosure including legal pleadings, discovery responses by both plaintiff and defendant, depositions and educational and medical records. I also researched the history of the Vocational Rehabilitation Act of 1973, as well as articles focusing on disability discrimination.

Compensation: I am being compensated for my preparatory activities and testimony in this matter at the rate of $75.00 per hour for preparation and $150.00 per hour for direct testimony in depositions and court appearances plus travel and incidental expenses associated with these activities.

Opinions and the basis for those opinions:

a. The district failed to meet its obligations requirements with under Section 504 as these relate to identification, qualification, evaluation, plan for services and accommodations and review. These requirements include documentation of impairment, effects of impairment on major life functions and specificity of accommodations and support services. The district did not have policies and procedures for evaluation and placement of students with disabilities qualified

under section 504. The district failed to meet its obligations to evaluate, identify and develop an educational plan for Tyler Henson. These multiple failures resulted in a violation of the standard of care for school administrators to follow to avoid discriminating against students with disabilities.

b. The kinds of accommodations that should have been provided for Mr. Henson under a Section 504 plan were simple and feasible. These would have provided him with access to the full general curriculum during his senior year at Baker High School. The district's failure to comply with section 504 denied Mr. Henson access to classes that were available to other students without disabilities

c. The district's failure to provide accommodations and support services under section 504 denied Tyler access to the general curriculum. The district also deprived him of the school achievement recognition that he had earned with class ranking and valedictory status

Baker School district is required to have procedures in place to evaluate students suspected of having disabilities (34 CFR/10435b). The district only provided a copy of its section 504 planning document (SD 349-351). Its district policy manual makes brief mention of "handicapped children" (SD 221) and "the slow learner" (SD 223). Nothing else in the materials I reviewed included actual procedures dealing with the identification of person suspected of having disabilities or specifically its obligations under section 504. The section 504 coordinator has the responsibility to suggest modifications in board policy to gain compliance. Mr. Breitbach in his deposition indicates he was unsure of this duty (p. 39 and 40).

Again according to 34 CFR/104.35.a, the district was obligated to initiate a section 504 process (comprehensive evaluation) for Mr. Henson upon receipt of the relevant medical findings from Dr. Mack of the Mayo Clinic in November of 2009. Receipt of the doctor's letter was acknowledged by Mr. Lingle in his deposition and also by Mr. Breitbach in his deposition (p.20). This process should have followed the steps required under section 504 which consist of the following:

<u>Notice to family</u>: the family should have been informed in writing as the intent of the district to initiate a 504 procedure or its intention to decline such a procedure including the reasons for its actions. Notices of all meetings should have been provided also. Mr. Breitbach in his deposition indicates no copy of procedural safeguards was sent to the family (p.42). There was no written acknowledgement of a letter by an attorney, requesting modifications on behalf of the family (p.43)

<u>Referral</u>: This step means that the district should have made a referral to the 504 team to conduct an evaluation. I could not locate any such referral in the record.

EXHIBIT A - 02

<u>Evaluation</u>: This step which must include the family requires a thorough investigation of the student's suspected handicap including relevant medical information, tests necessary to assess specific areas of need administered by trained personnel and other relevant historical data. The purpose of the evaluation is to determine Section 504 eligibility as a "qualified handicapped individual". Upon determination of Tyler's eligibility, the district was required to convene their 504 team of knowledgeable professionals as well as the family. The team would then implement an educational plan that would provide Tyler with a "free and appropriate education". It could include special education, related services, and accommodations and modifications in the delivery of regular or general education. The district acknowledged Tyler's status as a "qualified handicapped individual" in the depositions of Mr. Lingle and Mr. Breitbach

The process should have considered Tyler's handicap and its substantial impact on his learning. It should have considered its specific effect upon his attendance and access to the curriculum during his senior year. There is no documentation of a 504 plan in any of the school records I reviewed. Mr. Breitbach acknowledges the same in his deposition (p.28). There is no record that the district followed any of the steps outlined above. They did not convene a team of knowledgeable professionals to decide on an educational plan for Tyler. The district failed to initiate and carry out a Section 504 procedure for Tyler. The Baker School District violated the standard of care for administrators to follow to avoid discrimination against Mr. Henson and to provide him a free and appropriate education.

<u>If</u> a 504 pan had been developed for Tyler, it should have detailed the components for access to the general curriculum beyond the two courses that Tyler was enrolled in on campus and in person. The 504 plan could have included accommodations and services such as:

recordings or videos of class presentations
written copies of teacher lecture notes
on line participation via Skype or Facetime or comparable video conferencing
packaged versions of equivalent courses available through distance learning auspices
phone conferencing, peer tutoring, individual teacher consults
mutually agreed upon products for extra credit or alternative assignments

Certainly it is not my intent to suggest that the accommodations noted above constitute a comprehensive list. The 504 team that <u>never</u> met could have developed other creative strategies that fit the course content, teacher skills and Tyler's unique needs. Mr. Breitbach acknowledges the feasibility of some of these accommodations on p. 30, 37 and 38 of his deposition.

It is relevant to note that the strategies suggested here would not have altered the existing rigor of course requirements or grading standards. Tyler's transcripts from this high school years indicate a consistent high level of academic achievement on his part. The

EXHIBIT A - 03

504 plan, that was <u>never</u> conceived or implemented, would have permitted access to the regular curriculum in a manner that took into account his acknowledged disability.

While Section 504 plans include consideration of student as well as parental responsibilities, there is no requirement that the student seek remedies in terms of rehabilitation of health. Issues of weight loss, increased exercise regimens or even treatments for insomnia are strictly medical concerns. They are the concerns of a patient and his or her physician. To suggest that such an eligible 504 student participate in such remedies or demonstrate progress in these medical areas is not appropriate.

Finally Baker School District should have initiated and conducted a Section 504 plan for Tyler not only to graduate, but to retain his class ranking and eligibility for valedictory status. The district denied Tyler his class ranking and valedictory status ( Baker SD. P.191, list of GPA's). Baker School District penalized Tyler for his disability and requests for alternatives to on site participation and attendance. Because of their actions and failure to act, Baker School District denied Tyler the benefits of a public education.

*Mike Jakupcak*
Mike Jakupcak, Ed.D.

August 30, 2013